UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT ANTHONY KOLLER,

        Plaintiff,

v.                                          Case No. 22-cv-1421-bhl

MARTIN J. O'MALLEY,[1]
Commissioner for Social Security,

        Defendant.

---

## DECISION AND ORDER

Plaintiff Robert Anthony Koller seeks review of the Commissioner of the Social Security Administration's final decision denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons set forth below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

Koller applied for DIB and SSI on March 27, 2020, alleging a disability onset date of June 30, 2019. (ECF No. 8-1 at 164, 287.) After his claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id.* at 53–54, 99–100, 164.) That hearing was held on August 16, 2021. (*Id.* at 6.) Koller appeared *pro se* and a vocational expert provided testimony. (*Id.* at 6–50.) On January 19, 2022, the ALJ issued an unfavorable decision, finding that Koller was not disabled because he could perform his past relevant work and other unskilled work that exists in the national economy. (*Id.* at 164–82.) On September 26, 2022, the Appeals Council denied Koller's request for review. (*Id.* at 189.) Koller now seeks judicial review in this Court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] On December 20, 2023, while this matter was pending, Martin J. O'Malley was sworn in as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this case and no further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

# FACTUAL BACKGROUND

Koller was born on March 7, 1970, and was 49 years old on his alleged onset date. (ECF No. 8-1 at 287, 334.) When Koller applied for disability insurance, he was employed part-time as a customer service representative for a warranties company, a position he began on February 18, 2019. (*Id.* at 173, 343.) Koller worked 20 hours a week and earned $11.50 an hour. (*Id.* at 369.) Koller alleged an inability to work due to depression, fibromyalgia, a herniated disc, Barrett's esophagus, heart disease, breathing issues, psoriasis, tendinitis in the right shoulder, a stroke in 2019, and drowsiness. (*Id.* at 324.)

In assessing Koller's claim, the ALJ followed the five-step sequential evaluation method for determining whether an individual is disabled set out in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*Id.* at 165.) The ALJ found that Koller had not engaged in substantial gainful activity since June 30, 2019, the alleged onset date. (*Id.* at 167.) The ALJ noted that Koller had worked after the alleged disability onset date, but this work did not rise to the level of substantial gainful employment. (*Id.*) The ALJ found that Koller had the following severe impairments: coronary artery disease involving native coronary artery of native heart without angina pectoris; psoriatic arthritis; fibromyalgia; moderate persistent asthma without complications; and degenerative disc disease. (*Id.*) The ALJ further found that Koller did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 171.)

The ALJ determined that Koller had the residual functional capacity (RFC) to perform light work except that he can frequently climb ramps and stairs and stoop, kneel, crouch and crawl; occasionally climb ladders, ropes, or scaffolds; is limited to reaching overhead on a less than constant but at least frequent basis; must avoid concentrated exposure to dust, odors, fumes, and other pulmonary irritants; and is to avoid concentrated exposure to dangerous machinery and unprotected heights. (*Id.* at 172.) The ALJ also restricted Koller to frequent handling, fingering, and feeling with the bilateral upper extremities. (*Id.*) The ALJ adopted no mental limitations in the RFC, finding that Koller's mental health limitations did not affect his ability to perform the basic requirements of work. (*Id.* at 178.) Based on testimony from a vocational expert, the ALJ concluded that Koller could perform his past relevant work and was not disabled. (*Id.* at 180.) The ALJ also determined at step five that Koller could perform a significant number of other unskilled jobs in the national economy. (*Id.* at 181–82.)

**LEGAL STANDARD**

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is deferential, but the ALJ must "rationally articulate the grounds for her decision" and the Court's review is limited to the rationales actually offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

**ANALYSIS**

Koller's contends that the ALJ erred by: (1) not accounting for Koller's prescribed medications' adverse side effects when formulating the RFC and when assessing the supportability of Koller's subjective statements; (2) reaching conclusions regarding a medical source's opinion that were not supported by substantial evidence; and (3) failing to incorporate any non-exertional limitations in the RFC. (ECF No. 10 at 4.) Because none of Koller's arguments warrant remanding the case, the Commissioner's decision is affirmed.

**I.     The ALJ Reasonably Concluded that Koller's Prescribed Medications Did Not Cause Side Effects Preventing Unskilled Work.**

The record shows that the ALJ considered whether Koller's prescribed medications cause side effects. (ECF No. 8-1 at 175–76.) The ALJ noted that Koller had reported in September 2019 that his medications "allowed him to do all of his activities of daily living including working part time." (*Id.* at 175 (citing ECF No. 8-1 at 789).) Those same medical records include a notation that the "medications are working well no side effects and will be renewed for the next 2 months."

(*Id.* at 789.) The ALJ also identified several additional pieces of medical evidence supporting this conclusion. During a November 2019 pain management visit, Koller reported that he was walking three days a week around the block, doing some outdoor yard chores, thought he was "doing pretty well," and his symptoms were under control, although he needed to "stretch[] out" his Tramadol medication towards the end of the month. (*Id.* at 175 (citing ECF No. 8-1 at 804).) At a primary care visit in February 2020, Koller reported that he was doing the best he had in years and did not want to make any changes to his regimen (*i.e.*, including medications). (*Id.* (citing ECF No. 8-1 at 479).) During that visit he reported using Gabapentin for chronic pain and to aid in sleep. (*Id.* at 479.) The medical records from May and August 2020 appointments document that Koller was taking his medications as prescribed, he felt they were helpful, and he was not having any side effects. (*Id.* at 176 (citing ECF No. 8-1 at 903, 910).) In November 2020, Koller reported that "when he took his medication as prescribed, he noticed that he was the best he had been in a long time." (*Id.* (citing ECF No. 8-1 at 887).) During a health care appointment in September 2021, Koller denied any adverse side effects from his medications. (*Id.* at 177 (citing ECF No. 8-1 at 1160).) The Commissioner emphasizes that the instances cited by the ALJ of Koller denying that his medication caused side effects were not isolated incidents, pointing to a number of additional medical records documenting that absence of medication side effects. (ECF No. 23 at 10 (citing ECF No. 8-1 at 756, 772, 789, 807, 826, 889, 910, 1166, 1182, 1217).)

Koller insists, however, that the "adverse side effects of [his] prescribed medications are perhaps the most consistently-documented and most disabling aspect of his constellation of symptoms." (ECF No. 10 at 6.) To support his contention, Koller relies upon his own 2019 and 2021 function reports. (*Id.* (citing ECF No. 8-1 at 372, 381–84, 413).) He also cites his hearing testimony, during which he stated he needed to sleep after taking his medications and reported that he has missed work as a result of his medications. (*Id.* (citing ECF No. 8-1 at 26–29).) Koller also points to reports he made to various health care providers that his medications caused fatigue, drowsiness, and daytime sleepiness. (*Id.* at 6–7.) For example, on November 19, 2020, Koller presented for a medication management follow-up reporting an increase in fatigue and sedation. (ECF No. 8-1 at 1037.) In February 2021, Koller reported that he was having difficulty with sleep and used his medications to make him drowsy. (*Id.* at 1078.) In March 2021, Koller reported that he thought his medications were causing too much drowsiness. (*Id.* at 1194.) In September 2021, Koller presented to Susan Walsh, MSW, LCSW, a licensed clinical social worker, and reported

that the medications used to manage his pain caused severe fatigue and that he had been frustrated for years with the denial of social security disability insurance. (*Id.* at 1005.)

Based on this evidence, Koller contends that the ALJ "never explicitly evaluate[d] the effects of Koller's medication side effects on his ability to work." (ECF No. 10 at 7.) Koller's argument does not accurately reflect the ALJ's analysis. The ALJ explained that, contrary to Koller's hearing testimony, there is significant medical evidence showing that Koller regularly denied any side effects from medication from September 2019 to September 2021. (ECF No. 8-1 at 175–77.) In September 2021, the medical evidence reflected that Koller appeared to be taking his medications as prescribed with no adverse effects. (*Id.* at 1160.) The ALJ did consider Koller's allegations of fatigue and drowsiness, but generally did not find them to be medication side effects. (*Id.* at 172–74 (finding that Koller's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record").) And, while Ms. Walsh documented Koller's self-reports of his medication causing severe fatigue, the Court notes that the ALJ found Ms. Walsh's October 8, 2019 statement neither valuable nor persuasive. (*Id.* at 178–79.)

In his reply brief, Koller argues that the ALJ failed to acknowledge "copious" medical evidence that contradicts the cited-to instances of denied medication side effects. (ECF No. 24 at 2.) This again does not accurately reflect the record. Koller's cited evidence is far from copious and consists primarily of Koller's self-reporting. The medical records regarding the symptoms caused by Koller's medications do not command the interpretation Koller offers. The ALJ cited to medical evidence showing both that Koller himself denied any medication side effects and that his health care providers agreed. (ECF No. 8-1 at 175–77.) Based on the medical evidence, the ALJ reasonably concluded that Koller did not have significant medication side effects and that his fatigue and drowsiness did not prevent him from performing unskilled work.

The ALJ's decision is also supported by the testimony of Marie Turner, M.D., a state agency physician. Dr. Turner considered Koller's allegations that his medications caused fatigue and dizziness and found that the RFC appeared reasonable for Koller's functioning. (*Id.* at 121.) The ALJ's acceptance of Dr. Turner's assessment defeats Koller's argument. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that when the ALJ adopts a physician's assessment, that physician's consideration of the evidence is "factored indirectly into the ALJ's decision"). *Skarbek* is on point. The ALJ found Dr. Turner's opinion persuasive to the extent it

was consistent with the RFC. (*See* ECF No. 8-1 at 177.) Dr. Turner "[was] aware of [Koller's medication symptoms]," so her results are "factored indirectly into the ALJ's decision as part of the doctors' opinions." *See Skarbek*, 390 F.3d at 504.

## II. The ALJ's Conclusion that Dr. Rogers's Limitations Opinion Was Not Persuasive Is Supported by Substantial Evidence.

Daniel Rogers, D.O., Koller's treating primary care doctor, completed two assessments in July 2019—"Fibromyalgia Medical Opinion" and Physical Medical Opinion" —in which he opined that Koller was subject to the following limitations: (1) need for five 3-minute work breaks per hour; (2) would likely be "off task" fifteen percent of the workday; and (3) would likely be absent more than four day per month; and (4) can stand/walk only four hours totally in a workday. (ECF No. 10 at 10; ECF No. 8-1 at 845–55.) The ALJ determined that Dr. Rogers's opined limitations were not persuasive because the limitations were not supported by the record, including Dr. Rogers's own exam findings, and because Dr. Rogers himself called into question the reliability of his opinions when he stated it was difficult to determine whether Koller was putting forth full effort with testing. (*Id.* at 179.) Koller argues that the ALJ's discounting of Dr. Rogers's opinion is not supported by substantial evidence. (ECF No. 10 at 9–16.)

ALJs are not required to "defer or give any specific evidentiary weight . . . to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, they analyze opinions by persuasive value according to several factors, the most important of which are supportability and consistency. *Id.* An opinion is more persuasive when supported by relevant objective medical evidence and explanations. *Id.* at (c)(1). Similarly, an opinion is more persuasive when consistent with evidence from other sources. *Id.* at (c)(2). And an ALJ's assessment is sustained as long as it is minimally articulated and reasonable, even if another ALJ could have reached a different conclusion. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) ("[Courts] uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.") (internal quotations omitted); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering [the regulatory] factors, we must allow that decision to stand so long as the ALJ minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax.") (internal quotations omitted).

With respect to the Fibromyalgia Opinion, Dr. Rogers was asked, "Are your patient's impairments (physical impairments plus any emotional impairments) as demonstrated by signs,

clinical findings and laboratory or test results *reasonably consistent* with the symptoms and functional limitations described above in this evaluation?" (ECF No. 8-1 at 850 (emphasis in original).) Dr. Rogers answered "No" and then explained it was difficult to determine if Koller was putting forth full effort with testing. (*Id.*) In other words, Dr. Rogers himself called into question whether his opined functional limitations were reasonably consistent with Koller's impairments. Given the concerns raised by Dr. Rogers regarding his own limitations opinion, it is understandable that the ALJ did not find the opinion persuasive. The ALJ also noted that Dr. Rogers's extreme restrictions were inconsistent with the overall record. (*Id.* at 179.)

Koller argues that Dr. Rogers's own treatment notes do not contain any concerns about full effort on testing and are contradictory to the findings in the functional capacity evaluation from May 2019 that informed Dr. Rogers's opinions. (ECF No. 10 at 11.) The Commissioner notes that the record reflects where Koller "did not give full effort" on at least one other examination and cites to an initial neurological consultation from January 2019. (ECF No. 23 at 14 (citing ECF No. 8-1 at 596).) Koller contends this evidence does not pertain to the relevant time period and it is unlikely that Dr. Rogers would have even reviewed this consultation. (ECF No. 24 at 3.) Even if true, this is beside the point. The bottom line is that Dr. Rogers called into question his own opined limitations, and this questioning was a sufficient reason for the ALJ to discount them. This Court's review is limited to determining whether the ALJ satisfactorily weighed the evidence in reaching an opinion that was supported by substantial evidence. The ALJ's decision shows she did so and more than minimally articulated her reasons for finding Dr. Rogers's limitations' opinion not persuasive. That Koller or his counsel would have weighed the evidence differently is irrelevant. It is not this Court's function to re-weigh the evidence, as Koller urges. The ALJ's opinion discounting Dr. Rogers's limitations' opinion was supported by substantial evidence.

### III. The ALJ Satisfactorily Explained Why the RFC Did Not Include Koller's Assessed Mental Limitations.

When formulating a claimant's RFC, an ALJ must "consider" the functional effects of all medically determinable impairments, including ones that are not "severe," and account for functional limitations when the impairments affect the claimant's work functionality. 20 C.F.R. § 416.945. Accordingly, in determining an applicant's RFC, the ALJ need not account for a non-severe impairment that does not affect a claimant's ability to function at a job. Further, while the ALJ is not required to include non-exertional limitations that are not found credible, the ALJ must

provide an explanation as to why no limitations were included in the RFC. "While a mild . . . limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC," even if such limitations standing alone would not ordinarily prevent an individual from obtaining employment. *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphases removed) (citation omitted) (remanding when the ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations).

Koller contends that the ALJ committed error by failing to include the limitations from his non-severe impairments in the RFC assessment. (ECF No. 10 at 18.) More specifically, Koller contends the RFC should have accounted for Koller's "bad days" that would result in absenteeism and daytime fatigue and uncontrolled pain that contributes to attention and concentration deficits resulting in time "off task." (*Id.*)

In response, the Commissioner insists the ALJ considered whether Koller's depression and anxiety warranted RFC limitations and reasonably concluded they did not. (ECF No. 23 at 14–15.) In this case, the ALJ complied with the regulatory requirements by providing an explanation. The ALJ stated that the objective findings did not support mental health limitations and Koller's own testimony did not support such limitations. (ECF No. 8-1 at 178.) At the hearing, the ALJ asked Koller to tell her the physical reasons and then the mental health reasons he was unable to work. (*Id.* at 23.) As for the mental health reasons, Koller testified that he is depressed and takes medication to get himself "back to somewhat normal" and "to fall asleep." (*Id.* at 24.) Koller did not offer any mental health reasons for why was prevented from performing unskilled work.

The ALJ also cited to Koller's part-time employment in customer service, processing warranty claims. (*Id.* at 169–70.) Koller testified that his job required computer work for four to five hours a day and included taking calls from customers and assisting them with their complaints or inquiries regarding customer service. (*Id.* at 29.) The ALJ noted that Koller described no difficulty interacting with others while engaged in his job duties and no difficulty concentrating, persisting, or maintaining pace. (*Id.* at 169–70.) Koller criticizes the ALJ's reliance on his part-time employment. He notes that he was hired through the Department of Vocational Rehabilitation and reduced his hours in January 2021 because of his health conditions. (ECF No. 10 at 17.) Koller, however, cites to alleged physical difficulties, and does not cite to any specific mental health limitations. *See id.* (citing, ECF No. 8-1 at 728 (Koller "is able to flex hours based on

medical conditions."); 787 (Koller "is working at a call center 4 hr per day. . . . [T]he work allows him to stand, sit, or walk as needed."); 1005 ( Koller reports "new physical disability related to hands unable to perform his work."); 1266 (Koller presents with "low back pain in the mid lumbar region . . . and has missed work over the past several months due to pain.")). "Although the diminished number of hours per week indicated [Koller] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled." *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). The ALJ also noted that Koller has an associate degree, is able to read, write, and sign his name, can calculate change and operate a bank account, accesses a Facebook account weekly, plays games on his work computer, and uses his phone to text. (*Id.* at 169.) Based on Koller's testimony, his activities of daily living, and his part-time employment, the ALJ reasonably found that Koller did not have "any mental health limitation with respect to his ability to perform the basic requirements of work." (*Id.* at 178.)

The ALJ also found that Koller could perform three jobs that were part of his past relevant work: Lawn Service Worker; Order Picker; and Bakery Clerk. (*Id.* at 180.) In addition to past relevant work, the ALJ found that Koller could also perform the following unskilled occupations having a specific vocational preparation (SVP) of 2: Routing Clerk, with an estimated 104,000 jobs nationally; Marking Clerk, with an estimated 129,000 jobs nationally; and Cashier, with an estimated 526,000 job nationally. (*Id.* at 181.) *See* 20 C.F.R. § 404.1560(c) (explaining that the ALJ may support a finding that a claimant is not disabled by demonstrating that other work the claimant is able to perform exists in significant numbers in the national economy). The ALJ's findings are both reasonable and supported by the record. Koller simply did not carry his burden of demonstrating that he is incapable of performing the unskilled work as determined by the ALJ.

Koller's final argument is that a January 2023 statement from Ms. Walsh, a social worker/therapist, shows that he is disabled, and therefore, the case should be remanded to allow the Social Security Administration to incorporate this new evidence into the record. (ECF No. 10 at 20–21.) As noted by the Commissioner, Ms. Walsh's January 2023 statement was not before the ALJ or the Appeals Council. (ECF No. 23 at 16.) For a remand to be appropriate based upon such evidence, it is Koller's burden to show that the evidence is both new and material, and that he had good cause for not submitting the evidence earlier. *See* 42 U.S.C. § 405(g) (sentence six).

42 U.S.C. § 405(g) sentence six permits "[a] reviewing court [to] order additional evidence to be taken before the Commissioner upon a showing that there exits 'new evidence which is

material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.'" *Schmidt*, 395 F.3d at 741–42 (quoting 42 U.S.C. § 405(g)). According to the Social Security Administration, evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Newly created documents that summarize information long known will prevent a claimant from obtaining a remand as such evidence is duplicative or irrelevant. *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)).

Although the January 2023 statement was not before the ALJ, the ALJ did consider Ms. Walsh's October 2019 statement which opined that Koller was unable to work and "qualifies for disability based solely on his mental health issues . . . ." (ECF No. 8-1 at 869.) As noted by the Commissioner, this statement is not a medical opinion and her conclusion that Koller qualifies for disability is reserved to the Commissioner, so the ALJ reasonably found that the statement was neither valuable nor persuasive. (*Id.* at 178.) The ALJ further found that Ms. Walsh's opinion was not based upon any objective testing or supported by the record as a whole. (*Id.*) Ms. Walsh stated that Koller had suicidal ideation and the ALJ noted that Koller had been hospitalized once overnight for suicidal ideation but that the record was "replete with evidence of his denial of suicidal ideation." (*Id.*) The ALJ noted that Ms. Walsh's treatment notes consisted primarily of Koller's self-reported symptoms and activities and did not contain objective evidence to support her conclusion that Koller was disabled. (*Id.*) Ms. Walsh's statement was also inconsistent with Koller's testimony and other evidence showing that he was working part-time until at least January 2022.

Ms. Walsh's 2023 opinion similarly opined that Koller was unable to work "due to health related fatigue, medication side effects and severe depression." (ECF No. 10-1 at 1.) Ms. Walsh indicated several areas of "marked" limitations related to Koller's inefficiency and needing work breaks and his ability to interact with others, concentrating, persisting or maintain pace, and adapting or managing oneself. (*Id.* 3–4.) Ms. Walsh opined that Koller had exhibited these extreme limitations since at least 2018. (*Id.* at 5.) Ms. Walsh's January 2023 statement is inconsistent with Koller's testimony, his part-time employment, and other evidence. Given the

ALJ's discounting of Ms. Walsh's 2019 opinion, which is similar to her 2023 opinion, the Court finds that Ms. Walsh's January 2023 statement is not material and there is not a "'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson*, 191 F.3d at 776). The ALJ likely and reasonably would have discounted Ms. Walsh's 2023 opinion, and therefore the Court will not remand the case for its consideration.

In sum, an ALJ must provide an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). In this case, the ALJ did so and the Court will not disturb the ALJ's decision.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** pursuant to 42 U.S.C. §405(g), sentence four, that the ALJ's decision denying the plaintiff benefits is **affirmed,** and the case is **dismissed.** The Clerk is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 4, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge